UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Y. FRIEDMAN,

Plaintiff,

*– against –*

L. CHOAI,

Defendant.

**OPINION & ORDER**

24-cv-06459 (ER)

RAMOS, D.J.:

Y. Friedman ("Friedman"), proceeding *pro se*, brings this suit against L. Choai ("Choai"), his former wife, to preemptively collect attorney's fees for his defense in a potential future lawsuit. Doc. 22.[1] Friedman alleges that he is entitled to attorney's fees from Choai because he may need to fund a defense should Choai's prior state enforcement action against him, that has since been disposed of, be revived. Doc. 41 at 7.

Before the Court is Defendant's motion to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Doc. 38. For the reasons set forth below, the motion is GRANTED.

## I. BACKGROUND

### A. Factual Background[2]

This case arises out of a petition to confirm an arbitration award that Choai filed in New York Supreme Court on December 11, 2014.[3] NYSCEF No. 1. In that petition,

[1] All references to "Doc. __" are to the Docket in 24-cv-06459 unless otherwise noted.

[2] The facts herein are drawn from plaintiff's complaint and state court Documents which are susceptible to judicial notice. See Fed. R. Evid. 201(b)(2); *Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004); *Lee v. Springer Nature America, Inc.*, 759 F. Supp. 3d 234, 243 (S.D.N.Y. 2025)). To the extent that the allegations in the complaint are contradicted by judicially noticeable facts, including from the underlying state court proceedings, the judicially noticeable facts govern for the purposes of this motion.

[3] All references to "NYSCEF __" are to the Docket in case filed in New York Supreme Court with Index No. 653814/2014 unless otherwise noted.

Choai alleged that she and Friedman were married from 1991 until 1999 when they divorced. *Id.* at 1. She alleged that, following the divorce, Friedman failed to provide her with a *Get*[4] or adhere to monetary obligations. *Id.* Fifteen years later, according to the petition, Choai and Friedman agreed to a binding arbitration in front of the Beth Din of America[5] ("BDA") that took place in October 2014. *Id.* at Exhibit A.

In support of her petition in state court, she attached a copy of the arbitration decision dated October 30, 2014, which awarded Choai a sum of $82,185.00 to cover unpaid child support. NYSCEF No. 3 at 4. The arbitral award also directed Friedman to provide Choai with a *Get* "as soon as possible, but no later than November 21, 2014." *Id.* at 3. In addition to the lump sum, the BDA awarded Choai $150 per day in spousal support "so long as they remain married under Jewish law, as determined by the [BDA]." *Id.* at 4.

Justice Schlesinger of the Supreme Court of the State of New York, New York County, subsequently granted the petition and confirmed the award, and judgment in the sum of $111,490.00 was entered against Friedman on July 31, 2015. NYSCEF No. 54. The state court also noted that, pursuant to the arbitration award, Friedman would remain liable to Choai for $150.00 per day so long as they remain married under Jewish law, as determined by the BDA. *Id.* Choai later represented in the state proceedings that she would be willing to waive the money judgment in exchange for the *Get*, but Friedman refused to agree to those terms. NYSCEF No. 76 at 4. Subsequent to Friedman's failure to comply with the judgment against him, Choai moved to hold him in contempt for disobeying the judgment and his failure to respond to subpoenas and discovery regarding his assets. NYSCEF No. 68.

[4] A *Get* is a Jewish bill of divorce.

[5] The Beth Din of America is a rabbinical court that conducts arbitrations and mediations for a variety of disputes, including family disputes and Jewish divorces.

Following a show cause hearing, Friedman was held in both civil and criminal contempt by Justice Schlesinger after he "willfully refused to answer proper questioning posed by the court . . . and subpoenas served upon [him]." NYSCEF No. 77. Justice Schlesinger sentenced Friedman to thirty-days imprisonment on March 15, 2016, for his contempt. *Id.* Friedman was released after thirty days, and despite remaining in contempt, Justice Schlesinger declined to extend his sentence. NYSCEF No. 81. The case was then transferred to the Matrimonial Part in May 2016. NYSCEF No. 83.

Judge Cooper of the Matrimonial Part then found Friedman in civil contempt in June 2016 for failing to respond to the court's questions and the subpoenas, as well as for willful non-payment of the judgment. Doc. 40-5 at 3–4. Judge Cooper sentenced Friedman to six months of incarceration lest he purge himself of contempt through payment of the judgment. *Id.* at 5. The contempt order also stated that "the court may consider, upon [Choai's] request, that [Friedman's] contempt of court be purged and that [Friedman] be discharged from his commitment upon production of a *Get.*" Doc. 40-5 at 4–5. Friedman proceeded to evade arrest for more than five years until he was arrested on December 10, 2021, at which point the court determined that he was an extreme flight risk. NYSCEF No. 85–86. The court found that his incarceration was necessary to ensure his appearance, and committed Friedman to the custody of the New York City Department of Correction until further order of the court. *Id.* Friedman remained incarcerated at Rikers Island until October 2022 but was released pursuant to Judiciary Law § 775.[6] NYSCEF No. 99. Justice Ariel D. Chesler, then presiding over the case, noted in the release order that it be conditioned on Choai's ability "to renew her motion for contempt or for further incarceration in the future and that [Friedman] is not

[6] NY Judiciary Law § 775 permits a judge to discharge an individual imprisoned for contempt at the judge's discretion "as justice requires . . . ."

discharged from his monetary obligations." *Id.* According to the New York State e-filing system, the case was disposed of on December 21, 2022.[7]

In the instant case, Friedman seeks to recover "at least $150,000" from Choai "to properly fund a defense" in the since-disposed-of state case because that case could result in future incarceration, he is not represented by counsel in that case, and he is allegedly indigent. Doc. 22 ¶¶ 3–5, 7. He rests his claim to attorney's fees from Choai on *Turner v. Rogers*, 564 U.S. 531 (2011), a Supreme Court opinion concerning an indigent defendant's constitutional right to court-appointed counsel in civil contempt proceedings in a child support case. *Id.* at 1. Specifically, Friedman alleges that *Turner* requires Choai "to pay [his] fees or arrange alternative procedures, which defendant refuses to provide." Doc. 41 at 2. He alleges that he has suffered injury to his First Amendment rights and due process rights, and has been subjected to "other constitutional, statutorial [*sic*], and procedural violations." Doc. 22 ¶ 6. Friedman asserts that the Court has federal question jurisdiction pursuant 28 U.S.C. § 1331 because he is seeking to "enforce constitutional rights." Doc. 41 at 1.

The significant weight that Friedman places on *Turner* in providing him with a cause of action against Choai warrants a more detailed discussion of that case. *Turner* arose out of a dispute in a South Carolina family court in which Michael Turner had been ordered to provide weekly payment to Rebecca Rogers to support their child. *Turner*, 564 U.S. at 436. Turner fell behind in the payments to the tune of $5,786.76 and was consequently found to be in willful civil contempt. *Id.* at 436-37. He was sentenced to twelve months' imprisonment. *Id.*

Turner appealed the family court order while serving his sentence, alleging that he was constitutionally entitled to counsel at his civil contempt hearing. *Id.* at 438. The Supreme Court of South Carolina rejected his right to counsel claim and the Supreme

[7] The state court docket does not reflect the reason for the case disposal.

Court granted certiorari. *Id.* The question before the Supreme Court thus was whether the Due Process Clause obligates states, in civil contempt proceedings, to provide counsel to indigent parents facing imprisonment for nonpayment of child support. *Id.* at 441. The Court answered that question in the negative. It held that "the Due Process Clause does not *automatically* require the provision of counsel at civil contempt proceedings to an indigent individual who is subject to a child support order, even if that individual faces incarceration (for up to a year)." *Id.* at 448. The Court reasoned that alterative procedural safeguards are effective without "incurring some of the drawbacks inherent in recognizing an automatic right to counsel." *Id*. at 447. Among those safeguards are notice to the defendant that his ability to pay would be addressed at the contempt proceeding, an opportunity for the defendant to "respond to statements and questions about his financial status," and "an express finding by the court that the defendant has the ability to pay." *Id* at 447-48. Applied to Turner's circumstances, the Court found that he had not received the protections of such safeguards in his proceedings before the South Carolina family court. *Id.* at 449. The Court vacated the state court judgment and remanded. *Id.* The Court did not address or suggest that private parties, such as the parent seeking child support, would bear any responsibility for providing counsel.

In addition to the right to counsel issue in *Turner*, the Court also addressed why Turner's case was not moot. There, the respondents had argued that the case was moot because the Turner had already completed his prison sentence, thus precluding the existence of a justiciable controversy. *See* 564 U.S. at 439. The Supreme Court rejected that argument based on the case "fall[ing] within a special category of disputes that are 'capable of repetition' while 'evading review.'" *Id.* (quoting *Southern Pacific Terminal Co. v. ICC*, 219 U.S. 498, 515 (1911)). "[A] case based on that dispute remains live, if '(1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subjected to the same action again.'" *Id.* at 439-40 (quoting

*Weinstein v. Bradford*, 423 U.S. 147, 149 (1975)). The Supreme Court held that Turner's dispute remained live and was therefore not moot because his 12-month imprisonment was "too short to be fully litigated," and because there was "a more than reasonable likelihood" that Turner would be subject to imprisonment again. *Id.* at 440 (internal quotation marks omitted).

### B. Procedural History

Friedman filed an initial complaint in the instant case in the District of New Jersey on May 1, 2023. Doc. 11. Choai moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). Doc. 15. In response, Friedman filed an amended complaint on December 20, 2023, attempting to cure jurisdictional defects in the original complaint. Docs. 21–22. A second motion to dismiss was filed on January 3, 2024. Doc. 23. The District of New Jersey then *sua sponte* transferred the case to the Southern District of New York on August 27, 2024, finding that venue was not proper in New Jersey pursuant to 28 U.S.C. § 1391. Docs. 26–28. Choai's motion was simultaneously terminated without prejudice. *Id.* With the Court's leave, Choai filed another motion to dismiss on March 26, 2026. Doc. 38. Choai argues that the complaint ought to be dismissed because: (1) Friedman does not meet the amount in controversy threshold to establish federal diversity jurisdiction; (2) Friedman lacks standing; and (3) Friedman has failed to state a valid claim because he is not entitled to attorney's fees as a matter of law. Doc. 39 at 8–11.

## II. LEGAL STANDARDS

Where a party moves to dismiss pursuant to Rules 12(b)(1) and 12(b)(6), the Court is required to address the Rule 12(b)(1) motion first "because disposition of a Rule 12(b)(6) motion is a decision on the merits, and therefore, an exercise of jurisdiction." *Gannon v. 31 Essex St. LLC*, No. 22 Civ. 1134 (ER), 2023 WL 199287, at *2 (S.D.N.Y. Jan. 17, 2023) (internal quotation marks and citation omitted); *see Rhulen Agency, Inc. v. Alabama Insurance Guaranty Association*, 896 F.2d 674, 678 (2d Cir. 1990).

Pursuant to 12(b)(1), the Court is required to dismiss a complaint for a lack of subject matter jurisdiction if the Court "lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)). The party asserting subject matter jurisdiction bears the burden of establishing that jurisdiction exists by a preponderance of the evidence. *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *Makarova*, 201 F.3d at 113). When deciding on a 12(b)(1) motion, "the district court must take all uncontroverted facts in the complaint . . . as true[] and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (citation omitted). However, a plaintiff is not entitled to the truth of a "legal conclusion couched as a factual allegation" or a "naked assertion devoid of factual enhancement." *Calcano v. Swarovski North America Limited*, 36 F.4th 68, 75 (2d Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). However, the plaintiff still must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

Because Friedman is proceeding *pro se*, the Court construes his complaint "liberally to raise the strongest arguments [it] suggest[s]." *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013).

## III. DISCUSSION

### A. Choai's Rule 12(b)(1) Motion

Choai argues that the Court lacks subject matter jurisdiction because Friedman lacks standing and has failed to satisfy the jurisdictional amount required for federal diversity jurisdiction. Doc. 39 at 8–10.

#### *1. Standing*

Choai asserts that Friedman lacks Article III standing because he has not alleged injury-in-fact. *Id.* at 10. "A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if the court lacks the statutory or constitutional power to adjudicate it, such as when . . . the plaintiff lacks constitutional standing to bring the action." *Cortlandt St. Recovery Corp. v. Hellas Telecomms, S.à.r.l*, 790 F.3d 411, 416-17 (2d Cir. 2015) (quotation and citation omitted). Standing "may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Carter v. HealthPort Techs, LLC*, 822 F.3d 47, 56 (2d Cir. 2016) (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006)).

To demonstrate that there is constitutional standing at this stage, a plaintiff must allege sufficient facts to show: "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). Deficiency on any of these elements indicates a lack of subject matter jurisdiction and requires the Court to dismiss the case. *See Central States Southeast & Southwest Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 433 F.3d 181, 198 (2d Cir. 2005).

An injury is particularized and concrete when it "affect[s] the plaintiff in a personal and individual way" and wreaks upon the plaintiff some "physical, monetary, or cognizable intangible harm traditionally recognized as providing a basis for a lawsuit in American courts." *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 442 (2d Cir. 2022)

(quoting *TransUnion*, 594 U.S. at 427). Next, "an injury is 'actual or imminent' if it has actually happened or is 'certainly impending.'" *Soule v. Connecticut Association of Schools, Inc.*, 90 F.4th 34, 46 (2d Cir. 2023) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)). "'Allegations of *possible* future injury' are not sufficient." *Clapper*, 568 U.S. at 409 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).

Friedman has not pled a sufficient injury in fact. Viewed in the light most favorable to him, the record nonetheless lacks any support to find that he seeks to redress an injury that he has already suffered or that one is "certainly impending." Friedman asserts that the $150,000 he seeks "will be necessary *in the future* to properly defend" himself. Doc. 22 ¶ 7 (emphasis added). Yet the New York case against him has been disposed of; Friedman is not encumbered by having to defend himself in any ongoing action brought by Choai. Under these circumstances, Friedman has not shown that the mere possibility of having to defend a future lawsuit against Choai constitutes an "actual or imminent" injury. *See e.g., Lujan v. Defenders of Wildlife*, 504 U.S. 555, 563-64 (1992) (holding that a plaintiff's "intent" to revisit wildlife sites "at some indefinite future time" to observe endangered animals failed to assert an actual or imminent injury); *Waxman v. Cliffs Natural Resources, Inc.*, 222 F. Supp. 3d 281, 287-89 (S.D.N.Y. 2016) (holding that plaintiffs lacked standing where the alleged injury was predicated upon "a theoretical situation that may never come to pass" because it was "neither actual or imminent"); *Vulcan Steam Forging Co. v. A. Finkl & Sons. Co.*, No. 19 Civ. 962 (WMS), WL 2021 259762, at *4 (W.D.N.Y. Jan. 26, 2021) (failing to find injury in fact where plaintiff sought to be indemnified for potential future lawsuits that had yet to be commenced).

Because the alleged injury that Friedman claims he could be subject to "may never occur," he cannot demonstrate that he has suffered injury in fact. *SC Note Acquisitions, LLC v. Wells Fargo Bank, N.A.*, 934 F. Supp. 2d 516, 526-27 (E.D.N.Y. 2013). Ultimately, this Court "cannot entertain a claim which is based upon contingent

future events that may not occur as anticipated, or indeed may not occur at all." *Thomas v. City of New York*, 143 F.3d 31, 34 (2d Cir. 1998) (internal quotations omitted). Friedman's complaint must therefore be dismissed pursuant to Rule 12(b)(1) because he lacks Article III standing. Because Friedman has not sufficiently pled an injury in fact, the Court need not address the outstanding causation and redressability prongs.

*2. Mootness*

Friedman points to the mootness exception described in *Turner* presumably as a counterargument to Choai's standing and subject matter jurisdiction arguments. Doc. 41 at 1–2, 7. He seems to do so for the purpose of suggesting the state dispute remains live, thus implying beyond mere speculation that he will need defend himself again and therefore hire an attorney. *Id.* As explained below, this aspect of *Turner* is inapplicable here.

Friedman attempts to categorize this case as being within the "special category of disputes that are 'capable of repetition' while 'evading review,'" and thus excepted from being moot because it remains live. Doc. 41 at 1–2. Yet, Choai is not arguing that this case is moot, nor has the Court made such a finding. And the fatal standing issue that Friedman faces would not be cured were this case to fall under the "wrong capable of repetition yet evading review" exception. *Turner*, 564 U.S. at 439-40.

Even so, the facts here are not analogous to *Turner*. There, the challenged action was a time-limited prison term which would likely expire before it ran its course through the courts and was thus likely to evade review. Here, however, the challenged action is a potential suit that may put him in jeopardy of incarceration, which has no durational limit, let alone one that would expire before it could be fully litigated in a future court proceeding. The repetition prong of the exception, that is, whether "there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again" also has not been shown here. *Id.* at 440. Friedman's assertion that Choai will somehow revive the state case even though that docket reflects that it has been

disposed of, is speculative, whereas the plaintiff in *Turner* faced repeated proceedings and imprisonment.

*3. Subject Matter Jurisdiction*

Choai also argues that the Court lacks subject matter jurisdiction because Friedman's claim to potential future attorney's fees is too conjectural to satisfy the amount in controversy threshold for the exercise of diversity jurisdiction. Doc. 39 at 8–9. In response, Friedman contends that he is not invoking the Court's diversity jurisdiction. Doc. 41 at 1. Instead, he frames his case as raising a federal question, based on his alleged entitlement to attorney's fees under *Turner*. *Id.* at 1–2. However, regardless of whether Friedman is asserting federal claims under the Court's federal question jurisdiction, or state law claims under the Court's diversity jurisdiction, he does not have standing to do so for the aforementioned reasons.

In any event, Friedman's claim does not invoke the Court's federal question jurisdiction. A claim does not suffice if it's "wholly insubstantial and frivolous" or "obviously without merit." *See Hanna v. Camba, Inc.*, No. 22 Civ. 1117 (LDH) (VMS), 2023 WL 6214263, at *2 (E.D.N.Y. Sept. 25, 2023) ("[S]imply raising a federal issue in a complaint will not automatically confer federal question jurisdiction . . . if the purported federal claim is wholly insubstantial and frivolous."); *Oparaji v. Home Retention Corp.*, No. 21 Civ 2758 (ENV) (LB), 2022 WL 987560, at *4 (E.D.N.Y. Jan. 11, 2022) (same).

Friedman's claim that *Turner* provides him with a federal cause of action to recover future attorney's fees from Choai is wholly without merit. Put plainly, *Turner* does not support the assertion that a defendant in a civil-contempt proceeding is entitled to the award of attorney's fees to fund his defense, much less from a private party. Rather, the Supreme Court required that courts, pursuant to the Due Process Clause, install "procedural safeguards" for the protection of defendants facing incarceration in civil contempt proceedings. *Turner*, 564 U.S. at 444-47. Absent from those protections

is any mention or reference to attorney's fees, even when interpreted liberally. Thus, Friedman's claim does not raise a federal question.

Even if Friedman attempted to invoke the Court's diversity jurisdiction, that attempt would also fail because he cannot satisfy the jurisdictional threshold necessary to do so.

In the first instance, the "value of any potential recovery or relief" for an injury that the plaintiff has no constitutional standing to assert cannot be taken into account by the court when assessing the amount in controversy threshold. *Reale v. Providence and Worcester Railroad Company*, No. 23 Civ. 00990 (JAM), 2024 WL 1327203, at *3 (D. Conn. Mar. 28, 2024). As discussed above, because Friedman does not have standing to assert the claim he brings in this case due to its hypothetical nature, the $150,000 in relief he seeks cannot serve as the amount in controversy necessary for diversity jurisdiction.

Even assuming *arguendo* that there was sufficient injury in fact to support Article III standing, attorney's fees are not applicable to the amount in controversy threshold unless they "are recoverable as a matter of right pursuant to a statute or contract." *Schwartz v. Hitrons Solutions, Inc.*, 397 F. Supp. 3d 357, 366 (S.D.N.Y. 2019) (quoting *Ryan v. Legends Hospitality, LLC*, No. 11 Civ. 3110 (RJS), 2012 WL 3834088, at *2 (S.D.N.Y. Aug. 1, 2012)). Contrary to Friedman's assertion, attorney's fees in this instance are not recoverable as a matter of right pursuant to *Turner*. The amount in controversy therefore could not be sufficiently founded upon the relief sought in the complaint.

If this were not enough, the pecuniary award that Friedman seeks from Choai is too conclusory in its value to assume satisfaction of the jurisdictional amount. The party invoking a federal court's diversity jurisdiction bears "the burden of proving that it appears to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount." *Scherer v. Equitable Life Insurance Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003). A plaintiff's 'reasonable probability' burden does not pose a

significant barrier at this stage because there is "a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." *See Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 223 (2d Cir. 2017) (quoting *Colavito v. N.Y. Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir. 2006)).

Even so, the "face-of-the-complaint presumption is available only if the face of the complaint alleges facts plausibly suggesting the existence of claims aggregating over the jurisdictional minimum amount in controversy." *Wood v. Maguire Auto. LLC*, No. 09 Civ. 640 (GTS/GHL), 2011 WL 4478485, at *2 (N.D.N.Y. Sept. 26, 2011) (citing *Iqbal*, 556 U.S. 662, 681 (2009)), *aff'd*, 508 F. App'x 65, 65-66 (2d Cir. 2013) (summary order). A bare, conclusory allegation that the amount in controversy meets a certain amount will fail to overcome a plaintiff's even "minimal burden" at the pleading stage. *Venning v. Primark US Corp.*, No. 23 Civ. 10176 (JMF), 2023 WL 8188432, at *1 (S.D.N.Y. Nov. 27, 2023) (holding that "[p]laintiff fail[ed] to meet even this minimal burden, as he alleg[ed] only conclusorily that "the amount in controversy against the Defendant in this matter exceeds the sum or value of $5,000,000 . . . .'") (quoting *Ballard v. U.S. Bank N.A.*, No. 20 Civ. 2311 (JSR), 2020 WL 6381134, at *7 (S.D.N.Y. Oct 29, 2020)).

Friedman alleges virtually no facts in support of the award he seeks. He simply states that the $150,000 is to hire "[l]awyers with First Amendment expertise," "[l]awyers to interview witnesses," and to assure "funding is adequate." Doc. 41. at 7. This is not sufficient to carry his "minimal burden" at this stage. Thus, the Court finds that the complaint, on its face, fails to allege facts plausibly suggesting that the amount in controversy exceeds the jurisdictional threshold. *See Lasala v. E*TRADE Securities LLC*, No. 05 Civ. 5869 (SAS), 2005 WL 2848853, at *5 (S.D.N.Y. Oct. 31, 2005) ("[A] plaintiff cannot sidestep the jurisdictional question simply by pleading an indeterminate amount of damages, accompanied by a conclusory statement that the amount-in-controversy threshold is met.").

In light of the above, Friedman's complaint also falls short in that it cannot satisfy the amount in controversy required for this Court to exercise diversity jurisdiction.

* * *

Having found that the Court lacks Article III standing to exercise jurisdiction over Friedman's complaint, it must be dismissed for lack of subject matter jurisdiction. Even if the Court possessed subject matter jurisdiction, Friedman also has not implicated a federal question nor has he established the amount in controversy required for diversity jurisdiction.

## IV. CONCLUSION

For the reasons set forth above, the motion to dismiss is GRANTED. The Clerk of Court is respectfully directed to terminate the motion, Doc. 38, and to close the case.

It is SO ORDERED.

Dated: November 16, 2026
New York, New York

EDGARDO RAMOS, U.S.D.J.